RICHARD J. JOHNSON, Plaintiff-Appellant, v. FEDERAL RESERVE BANK OF CHICAGO, Defendant-Appellee.

First District (1st Division) No. 1—89—1450

Opinion filed May 21, 1990.

428

Michael G. Sebela & Associates, Ltd., of Oak Brook (Michelle T. Miller, of counsel), for appellant.

Freeborn & Peters, of Chicago (Michael D. Freeborn and Elizabeth D. Sharp, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Richard Johnson sued his employer, the Federal Reserve Bank of Chicago (the Bank), alleging intentional infliction of emotional dis-

tress. The trial court granted the Bank's motion to dismiss the complaint as insufficient, and on the grounds that the claim was barred by the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*). For the reasons below, we reverse.

Plaintiff alleges that in May 1984, Johnson, a 14-year employee of the Bank, was instructed by his superiors to begin using unauthorized procedures to access the Bank's computer files. The procedures compromised the confidentiality of the files, and Johnson objected to their use. Several days after implementation of the unauthorized procedures, Johnson's department was inspected by internal auditors. Johnson disclosed the unauthorized procedures to the internal auditors, contrary to orders from his superiors to conceal the procedures, and Johnson's superiors were cited for violations of the Bank's internal operating rules.

In January 1985, the Bank, plaintiff alleges, was using procedures that violated United States Treasury Department Regulations. When the Bank received notice of a Treasury Bureau inspection, Johnson was instructed to use conforming procedures for the duration of the inspection and conceal the use of the violative procedures. Johnson, however, disclosed the violations to the Treasury Bureau. (The record does not indicate whether the Treasury Bureau took any action against the Bank as a result of Johnson's disclosures.)

Plaintiff further alleges that in February 1985, he was instructed to conceal from customers the length of time for completion of their transactions with the Bank, because the Bank was not completing the transactions within the time required by Federal banking regulations. When Johnson objected, he was told, in essence, to be quiet.

Johnson's superiors are alleged to have harassed Johnson from May of 1984 to January of 1986 in retaliation for his objections to the claimed illegal practices: Johnson's superiors threatened to fire him, gave him excessive work loads, required him to work up to 20 hours a week longer than other employees in his department, denied him opportunities for advancement, undervalued the quality of his work and gave him poor performance reviews, and undercut his instructions to his direct subordinates.

Plaintiff further alleges that due to the harassment, his mental and physical health deteriorated and he was forced to take a medical leave of absence from November 1985 to December 1986. He was treated for severe arterial hypertension, and when he returned to work at the Bank, he told his superiors that he was taking medication for hypertension and should not be subjected to undue stress. Nevertheless, Johnson's superiors resumed their conduct of verbal abuse

and gave Johnson an excessive work load. Several days after returning to work, Johnson met with one of his superiors, Arnold Pugh, and complained that the continued harassment and excessive work was endangering his health. Pugh replied, "I don't give a damn that you're sick."

Johnson further alleges that he left the Bank in January 1986, and as the result of his physical and mental condition, has been unable to work. Johnson continues to be treated for severe hypertension and has received psychotherapy.

On January 4, 1989, Johnson filed his amended complaint, alleging the above facts and seeking recovery for intentional infliction of emotional distress. The Bank moved to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), and also argued that the claim was barred by section 5(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(a)). The trial court granted the Bank's motion. Johnson appeals. Because this appeal arises from a motion pursuant to section 2—615, the facts above are taken from the amended complaint and assumed true, with all reasonable inferences drawn most favorably to Johnson.

The Bank first argues that Johnson alleged no facts to establish that its conduct was either intentional, or extreme and outrageous, necessary elements of a claim for intentional infliction of emotional distress. (See *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765.) But the complaint was not so lacking that no set of facts could be proved that would entitle Johnson to relief. *Conant v. Karris* (1987), 165 Ill. App. 3d 783, 520 N.E.2d 757; *Griffis v. Board of Education, District 122* (1979), 72 Ill. App. 3d 784, 391 N.E.2d 451.

The Bank contends that the complaint failed to establish that its conduct was intentionally calculated to cause emotional distress. But Johnson alleged that his superiors, acting in their capacity as his supervisors, engaged in a pattern of abusive conduct for almost two years. The allegations establish the nature and duration of the superiors' conduct and support the reasonable inference that the Bank, as employer, knew of and allowed the conduct either with the purpose of inflicting severe emotional distress, or knowing that the conduct was substantially certain to result in severe emotional distress.

The Bank further contends that its conduct was not sufficiently extreme or outrageous to support a complaint for emotional distress, but ignores the allegation that its conduct was retaliatory. The complaint alleged facts establishing a pattern of abusive conduct,

which began immediately after Johnson's first disclosure of improper banking practices and continued for the remainder of his employment at the Bank, even after Johnson had notified his superiors of his deteriorated physical condition. The allegations support the reasonable inference that the Bank's conduct was retaliatory, a motivation that defeats the Bank's assertions of proper conduct.

The Bank asserts that the threats of dismissal, extra hours, onerous work load, unfavorable performance reviews, and subversion of Johnson's authority were part of a normal work environment which a reasonable person should have been expected to endure. Had the Bank's conduct been genuine efforts to improve the performance of an employee, Johnson might have either found relief by following directions and performing to his superiors' expectations, or been expected to endure the vagaries of the work environment. But where the conduct, motivated by a retaliatory animus, imposed arbitrary and punitive hardships and continued even after the Bank knew of Johnson's deteriorated condition, Johnson could have had no expectation of relief while he remained in the employ of the bank, regardless of his performance. The Bank's conduct, though not extreme and outrageous *per se*, became so by its retaliatory and punitive nature.

The retaliatory motivation also defeats the Bank's contention that its conduct served a legitimate purpose. The Bank contends that it had a legitimate employment objective in demanding that Johnson follow procedures that were lawful and improper only according to its own policies. The Bank distinguishes *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829, which allowed recovery for emotional distress caused by an employer's coercion of an employee to perform criminal acts, but again ignores the inference of retaliation. Engaging in abusive conduct to coerce an employee to follow lawful directions, while bad management, constitutes a legitimate objective. But the same abusive conduct, employed to punish whistle-blowing, serves no legitimate purpose.

Given the retaliatory nature of the Bank's conduct, the facts alleged established that the conduct satisfied the criteria for extreme and outrageous conduct discussed in *McGrath v. Fahey* (1988), 126 Ill. 2d 78, 86-89, 533 N.E.2d 806: the conduct arose from an employment relationship in which the Bank held a position of authority, determining the nature, conditions, and duration of Johnson's employment; the Bank's conduct, being retaliatory, served no legitimate purpose; and the abusive conduct continued even after the Bank knew of Johnson's susceptibility to emotional distress.

In summary, the complaint alleged facts establishing intent

and a retaliatory context that elevated the Bank's conduct to an extreme and outrageous level. The Bank does not dispute that Johnson suffered severe emotional distress. Thus, the complaint set forth a set of facts through which Johnson could prove intentional infliction of emotional distress and should not have been dismissed as insufficient.

The Bank next argues that Johnson's common law claim for intentional infliction of emotional distress was barred by section 5(a) of the Workers' Compensation Act (the Act), which provides in relevant part:

"No common law or statutory right to recover damages from the employer * * * for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act." (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(a).)

The Bank's argument, however, is without merit.

■■ ■ The Act provides exclusive remedies for claims against an employer for accidental injuries in the work place (see *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198; *Meerbrey v. Marshall Field & Co.* (1989), 189 Ill. App. 3d 1085, 545 N.E.2d 952), and includes a remedy for infliction of emotional distress (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(k)). That remedy, however, applies only to vexatious delay in handling workers' compensation claims. (See *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 448 N.E.2d 866.) *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198, denied a common law claim for intentional infliction of emotional distress, but based its holding on the simple logic that an employee compensated pursuant to the Act could not then bring a common law action necessarily grounded on the premise that the injury was not compensable by the Act. Subsequent cases denying recovery for emotional distress followed the *Collier* rationale. (See *Fregau v. Gillespie* (1983), 96 Ill. 2d 479, 451 N.E.2d 870; *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 448 N.E.2d 866.) But an employee who is uncertain of his grounds for recovery, and has filed for compensation under the Act, may file a common law action. (*Witham v. Mowery* (1987), 161 Ill. App. 3d 322, 514 N.E.2d 531.) Thus, compensation under the Act excludes compensation through a common law claim, but the Act does not automatically bar common law claims against an employer.

■■ ■ Intentional torts, such as infliction of emotional distress apart from vexatious delay, fall outside the scope of the Act as they are not accidental and do not arise from conditions of employment.

(See *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198.) Further, intentional torts are not intended to be compensable under the Act: "[T]he socially beneficial purpose of the workers' compensation law was not meant to permit a person who commits an intentional tort to use the compensation law as a shield against liability." (*Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 915, 380 N.E.2d 924.) Thus, the Act does not bar common law actions for intentional torts where the injury was inflicted by the employer or a co-employee acting as the alter ego of the employer. (See *Jablonski*, 63 Ill. App. 3d 908, 380 N.E.2d 924. See also *Meerbrey*, 189 Ill. App. 3d 1085, 545 N.E.2d 952.) Here, Johnson alleged intentional conduct by persons acting in their capacity as managers of the Bank, therefore as the alter ego of the Bank, and there is no indication that Johnson received compensation under the Act. Johnson's claim was not barred.

■ Further, had Johnson's claim been barred, dismissal pursuant to section 2—615 would have been improper, as that section addresses defective pleadings. A motion to dismiss the claim as statutorily barred would properly have been brought pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), which provides for "involuntary dismissal based upon certain defects or defenses," including the grounds "[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding *** or defeating the claim." (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) Further, section 2—619 requires that "[i]f the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit." (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a).) Even were the Bank's argument treated as a section 2—619 motion, it was unsupported by affidavits. The Bank's argument that Johnson's claim was barred by section 5(a) of the Workers' Compensation Act was groundless, substantively and procedurally. Accordingly, we reverse and remand.

Reversed and remanded.

BUCKLEY, P.J., and CAMPBELL, J., concur.