**Tamara CLASS, Plaintiff,**

v.

**NEW JERSEY LIFE INSURANCE COMPANY and William Winsberg, Defendants.**

**No. 88 C 9842.**

United States District Court,
N.D. Illinois, E.D.

Aug. 31, 1990.

---

**9.** Apparently, this case was not subject to 5 U.S.C. §§ 556–57. Therefore, 5 U.S.C. § 706(2)(E) would not apply.

conduct was so extreme and outrageous as to warrant liability for the tort of intentional infliction of emotional distress for which the company and Winsberg are jointly and severally liable to plaintiff under *respondeat superior.* Defendants have moved for summary judgment on Count II.

This Court has jurisdiction of Count I pursuant to Title VII of the Civil Rights Act, 42 U.S.C. section 2000e–5(f)(3). Count II is properly before this Court under the doctrine of pendent jurisdiction.

Summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial". *Teamsters Local 282 Pension Trust Fund v. Angelos,* 839 F.2d 366, 369 (7th Cir.1988); quoting, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a material issue of fact remains, summary judgment should be denied.

Defendants argue that they are entitled to summary judgment on Count II because plaintiff has failed to state a claim for intentional infliction of emotional distress, *see* FRCP 12(h) and 56, and even if plaintiff has stated a claim, she cannot prove damages since her temporomandibular joint syndrome existed prior to Winsberg's employment. Alternatively, defendants argue that they are entitled to judgment in that plaintiff alleges a *respondeat superior* claim which is pre-empted by the Illinois Worker's Compensation Act.

In order to state a cause of action for intentional infliction of emotional distress, the plaintiff must allege facts which establish: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct. *McGrath v. Fahey,* 126 Ill.2d 78, 86, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988); *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976); *Miller v. Equitable Life Assur. Soc.,* 181 Ill.App.3d 954, 956, 130

Solomon I. Hirsh, Chicago, Ill., for plaintiff.

Daniel I. Schlessinger, Timothy M. Maggio, Kathleen Y. Simmons, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff, Tamara Class, filed a two count complaint against defendants, New Jersey Life Insurance Company ("the company"), and its employee, William Winsberg. Count I alleges that defendants engaged in sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sections 2000e *et seq.* The gravamen of Count II of plaintiff's complaint is whether she may recover for the alleged aggravation due to stress of a pre-existing condition on the theory of the intentional infliction of emotional distress where her company terminated her after she complained to the company about the salacious behavior of her superior. Count II alleges that Winsberg's

Ill.Dec. 558, 559, 537 N.E.2d 887, 888 (1st Dist.1989).

Under Illinois law, the first prong of the tort is satisfied if the defendants' conduct is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency' ". *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976), quoting Restatement (Second) of Torts, section 46, comment d (1965). The tort does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts, section 46, comment d (1965).

With regard to the first element, defendants contend that Winsberg's conduct was no more than ordinary banter between co-workers and therefore does not meet the high standard of extreme and outrageous conduct. Plaintiff contends that after Winsberg stopped the sexual harassment, his motive became one of retaliation against her for reporting his inappropriate behavior to higher officers of the company.

In support of her claim, plaintiff alleges that, during an eight week period, Winsberg regularly subjected her to sex-related jokes on a daily basis; twice told her in detail a sexual episode involving himself and two women, and another episode involving himself, a male friend and a woman; announced to the entire office staff, including plaintiff, that he would like to have sex with his girlfriend and another woman at the same time; invited plaintiff and two other women to his residence for a weekend for the implied purpose of having sex; invited plaintiff alone to his residence for a weekend for the implied purpose of having sex; asked plaintiff if she swallowed when engaging in oral sex; told plaintiff and another woman employee that he likes to engage in anal sex but that his girlfriend would not let him; and described to plaintiff and two other women how big his sex organ was.

Plaintiff also complains that Winsberg engaged in retaliatory conduct after she telephoned a vice president of the company about his behavior. Specifically, plaintiff alleges that Winsberg left the office clerk in charge of the office in his absence; tried to cause friction between plaintiff and other employees; refused to let plaintiff deal with agents who came to the office by taking the files away from her and personally dealing with the agent; failed to keep plaintiff informed about new products being offered by the company; teased plaintiff about her dental appliance after she asked him to stop; kept her less informed about changes in office procedures; and told plaintiff that he was going to get even with her.

While Winsberg's conduct with regard to the sexual statements may have been "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair", *see, Miller v. Equitable Life Insurance Society*, 181 Ill.App.3d 954, 957, 130 Ill.Dec. 558, 560, 537 N.E.2d 887, 889 (1st Dist.1989), it does not rise to intentional infliction of emotional distress on its own. Had the chain of events ended at this point there would be no cause of action, as argued by defendants. However, it is alleged that Winsberg engaged in a pattern of behavior to retaliate against plaintiff for her complaint about his prior conduct. Plaintiff acted reasonably by telephoning the company headquarters in New Jersey to complain about Winsberg's alleged salacious conduct. Winsberg then allegedly retaliated by undermining plaintiff's authority within the office and generally making it more difficult to do her job. Thereafter, she was terminated by the defendant insurance company. It would be reasonable for a jury to find that Winsberg's alleged retaliatory conduct faciliated plaintiff's termination by the company. Furthermore, it cannot be disputed that Winsberg's alleged threat to "get even" with plaintiff was realized when her employment was terminated. *See, Oxman v. WLS–TV*, 846 F.2d 448 (7th Cir.1988). Winsberg's alleged retaliatory conduct is that type of extreme and outrageous conduct which, together with the other elements of the tort, constitutes intentional infliction of emotional distress. Therefore, this Court finds that plaintiff has alleged facts which, if proven,

could permit a recovery for the tort of intentional infliction of emotional distress.

Defendant urges this Court to follow *Miller v. Equitable Life Assur. Soc.,* 181 Ill.App.3d 954, 130 Ill.Dec. 558, 537 N.E.2d 887 (1st Dist.1989), in which the Illinois Appellate Court dealt with intentional infliction of emotional distress in an employment setting. The conduct at issue in *Miller* was similar to that alleged by plaintiff in the instant case. The Court found that personality conflicts among co-workers are not only unavoidable but often result in stress. *Id.* at 957, 130 Ill.Dec. at 560, 537 N.E.2d at 889. The *Miller* Court refused to allow this stress to form the basis for this tort because virtually every employee would have a cause of action. *Id.* at 957, 130 Ill.Dec. at 560, 537 N.E.2d at 889. While the *Miller* Court described the conduct as "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair", the court found that the defendants' conduct was not so outrageous and extreme as to go beyond all bounds of human decency. *Id.* at 957, 130 Ill.Dec. at 560, 537 N.E.2d at 889.

The decision in *Miller* is not binding on this Court. When a federal court applies state law, its duty is to apply the law that the Supreme Court of that state would apply in the same context. *Green v. J.C. Penney Auto Ins. Co., Inc.,* 806 F.2d 759 (7th Cir.1986). "Intermediate appellate court cases are useful but not binding evidence of what the Illinois Supreme Court would do in a similar case". *Id.* This Court finds that the rationale of *Johnson v. Federal Reserve Bank of Chicago,* 199 Ill. App.3d 427, 145 Ill.Dec. 558, 557 N.E.2d 328, 5 IER Cases 633 (1st Dist.1990), the more recent statement of the First District of the Illinois Appellate Court, would more likely be followed by the Illinois Supreme Court.

In *Johnson,* the plaintiff accused defendant of engaging in a pattern of abusive conduct designed to retaliate against and punish plaintiff for informing the United States Treasury Department that the Bank did not comply with federally mandated banking procedures. *Id.* at 431–32, 145

Ill.Dec. 558, 557 N.E.2d 328. The Court found that the conduct, though not extreme and outrageous *per se,* became so by its retaliatory and punitive nature, thus satisfying the first prong of the tort. *Id.* Likewise, this Court finds that a jury could reasonably conclude that Winsberg's conduct was designed to punish plaintiff, who followed the proper channels to register a complaint.

■ Defendants then argue that plaintiff has no damages since her temporomandibular joint syndrome existed as early as February 20, 1988 and Winsberg had not started working for the company until March 14, 1988. It is well established that "the tortfeasor takes his victim as he finds him (in this case her), so if the victim has a preexisting condition which the tort aggravates, the tortfeasor is liable for the full consequences." *Pieczynski v. Duffy,* 875 F.2d 1331, 1336 (7th Cir.1989). Therefore, it is not determinative that plaintiff suffered from temporomandibular joint syndrome prior to Winsberg's arrival as she may recover for any aggravation of her pre-existing condition.

This Court finds that plaintiff has alleged facts which, if proven, state a cause of action for intentional infliction of emotional distress. Moreover, whether plaintiff's injury to her jaw worsened as a result of Winsberg's conduct is a genuine issue of fact for the jury. Since plaintiff has stated a cause of action and there exists an issue of fact, summary judgment is not appropriate.

■ Defendant company contends that it is entitled to summary judgment since *respondeat superior* claims are pre-empted by the Illinois Workers' Compensation Act (WCA). The company relies on *Bailey v. Unocal Corp.,* 700 F.Supp. 396 (N.D.Ill. 1988), in which a former employee brought suit against her employer and supervisor for sexual harassment and intentional infliction of emotional distress allegedly caused by the supervisor's actions. To avoid preemption under the WCA, plaintiff must allege the "direction, encouragement or committal of the intentional infliction" by the corporate employer. *Id.* at 400. In

*Bailey,* the court found that "derivative claims stemming from the conduct of employees under *respondeat superior* are exactly those types of claims preempted by the Illinois Workers' Compensation Act". *Id.* Thus, the threshold question is whether the company directed, encouraged or committed the alleged intentional infliction. In the instant case, the company would have this Court hold that it was not directly involved in the alleged sexual harassment which plaintiff claims caused her distress. However, this Court has found that it was the retaliatory nature of Winsberg's conduct after plaintiff complained of his previous conduct that is extreme and outrageous. Further, this Court finds that there is a question of fact as to the role of the company in this chain of events. It cannot be disputed that the company, not Winsberg, had the power to fire plaintiff. It would not be unreasonable for a jury to find that the company knew that Winsberg requested plaintiff's employment termination after she complained of his previous conduct. *See, Oxman v. WLS–TV,* 846 F.2d 448, 457 (7th Cir.1988). Since the threshold question, whether the company directed, encouraged or committed the alleged intentional infliction, is within the province of the jury, the company's motion for summary judgment as to Count II must be denied.

■ The company's motion for summary judgment is grounded upon the theory that plaintiff fails to state a claim for intentional infliction of emotional distress. *See* FRCP 12(h). While there exists an issue of material fact sufficient to preclude summary judgment, this Court finds that plaintiff's complaint is defective. Plaintiff's complaint, paragraph 24, states that "New Jersey Life and Winsberg are jointly and severally liable for the damages which plaintiff has suffered and is continuing to suffer *as a result of Winsberg's actions.*" (emphasis added). There can be no doubt that plaintiff has alleged *respondeat superior* liability on the part of the company, and therefore, this Court will dismiss Count II with respect to the company. Because it appears that plaintiff could state an intentional infliction of emotional dis-

tress claim, plaintiff will be allowed until and including September 21, 1990 to amend her complaint.

ORDERED: Defendant's motion for summary judgment on Count II is denied. Count II is dismissed with respect to New Jersey Life Insurance Company. Plaintiff is granted leave to amend her complaint until and including September 21, 1990.