THIRD DIVISION

July 25, 2001

(
Nunc
 
Pro
 
Tunc
 June 6, 2001)

No. 1--00--0730

ROBIN SENESAC and ELIZABETH SENESAC, ) Appeal from the

) Circuit Court of

Plaintiffs-Appellants, ) Cook County.  

)

)

)

EMPLOYER'S VOCATIONAL RESOURCES, INC., )

CCM, INC., d/b/a CREATIVE CASE )

MANAGEMENT, and STATE FARM FIRE AND )

CASUALTY COMPANY, ) Honorable

) Michael J. Hogan,

Defendants-Appellees. ) Judge Presiding.  

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs Robin and Elizabeth Senesac appeal from an order of the circuit court dismissing their second amended complaint against defendants Employer's Vocational Resources, Inc. (EVR), CCM, Inc., d/b/a Creative Case Managment (CCM), and State Farm Fire and Casualty Company (State Farm), alleging negligence and intentional infliction of emotional distress, pursuant to section 2--619 of the Illinois Code of Civil Procedure (735 ILCS 5/2--619 (West 1998)).  The trial court granted defendants' motions to dismiss based on its finding that plaintiffs' common law claims were barred by the exclusivity provision of the Illinois Workers' Compensation Act.  
On appeal, plaintiffs contend that the exclusivity provision of the Workers' Compensation Act does not bar their common law claims alleging intentional conduct by defendants and that their allegations sufficiently pled a cause of action for intentional infliction of emotional distress.  For the reasons set forth below, we affirm in part, reverse in part, and remand.  

On November 24, 1999, plaintiffs filed a 12-count second amended complaint (complaint).
(footnote: -6)  Plaintiffs alleged that on June 20, 1996, Robin injured his back while employed as an appliance repairman for Bade Appliance where he had worked for 16 years.  Robin was entitled to receive certain payments which included, but were not limited to, disability payments from Bade Appliance through State Farm pursuant to a workers' compensation insurance policy issued by State Farm to Bade Appliance.  State Farm arranged for EVR to provide Robin with vocational rehabilitation and job placement service.  Plaintiffs alleged that they relied on CCM's assurances that the services provided would likely lead to Robin's return to gainful employment.  Counts I through III were claims against each defendant, individually, for "[failure] to meet the standard for providers of job placement services and [causing] physical, mental and emotional harm to [Robin] ***."  Plaintiffs also alleged the following: defendants failed to provide job retraining to Robin with the knowledge that such a failure would result in Robin's continued inability to secure employment and "psychological injury" to Robin; certain vocational specialists were aware of Robin's "deteriorating mental state" as a result of his repeated rejections by potential employers and because the services were provided in a manner that would likely lead to more rejections; and defendants "directed, advised, and required" Robin to seek employment in positions for which he was not qualified or he was unable to physically perform, such as positions requiring lifting weights greater than his 25-pound lifting limit, crouching or bending, excessive standing, or skills and experience that he did not possess.  

Plaintiffs' complaint further alleged: defendants' job placement services required Robin to make 25 "in person employer contacts" per week in addition to the contacts provided by the job placement specialists; Robin applied to over 1,400 businesses and was rejected or failed to obtain employment with any of them; he was required to apply to businesses located over 60 miles from his residence; defendants required him to apply for jobs beyond his training and experience or that were "medically inappropriate"; defendants required him to apply for positions with businesses that were not currently hiring; he was required to apply for jobs that were "demeaning" and would not provide income necessary to support his family; defendants failed to recommend retraining; and defendants failed to deal with him fairly and in good faith.  The complaint further stated that as a result of the alleged acts and omissions of defendants, Robin was "diagnosed with depression due to emotional distress resulting from his inability to find employment after applying for over 1,400 jobs, and was at risk to be unemployed as a result of said emotional distress and depression."  Plaintiffs also alleged that on May 11, 1998, Robin was admitted to a hospital as a mental patient and diagnosed with acute depression, sleeplessness, suicidal ideation, and hopelessness.  These conditions were attributed to frustration from his employment search.   

In counts IV through VI, the above allegations were also made in support of plaintiffs' claims against each individual defendant for intentional infliction of emotional distress.  Counts VII through XII were claims by Elizabeth against each defendant for loss of consortium based on the same allegations contained in the prior counts.  

State Farm filed a motion to dismiss plaintiffs' complaint pursuant to section 2--619 of the Illinois Code of Civil Procedure.  State Farm argued that any duty that it owed Robin was created only through its provision of workers' compensation insurance to his employer, Bade Appliance.  Citing sections 8 and 19(k) of the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 
et
 
seq
.), State Farm argued that plaintiffs' claims arose out of its provision of benefits under the Act and that the claims, therefore, were barred by the "exclusive remedy" provision of the Act.  State Farm also argued that plaintiffs failed to exhaust their administrative remedies under the Act.  

CCM also filed a section 2--619 motion to dismiss plaintiffs' complaint.  CCM contended that Robin would not have been involved with CCM "but for" his original back injury while working for Bade Appliance.  According to CCM, because State Farm, Bade Appliances' insurer and agent, directed Robin to participate in CCM's rehabilitation services and receive disability checks, Robin's relationship with CCM was the result of his employment rather than a personal choice.  CCM argued, therefore, that the Act barred plaintiffs' claims.  EVR also filed a section 2--619 motion to dismiss plaintiffs' complaint, arguing that, according to the allegations of the complaint, its duty to Robin arose from the fact that State Farm was providing workers' compensation benefits to him and that EVR was State Farm's agent.  EVR similarly argued as the other defendants had that the exclusivity provision of the Act preempted plaintiffs' claims.  

In their response, plaintiffs contended that the Act does not insulate an employer, or its insurer and agents, from common law liability for "any tortious action, including intentional" acts against an injured employee.  They argued that the exclusive remedy provision cited by defendants did not apply because the complaint alleged that plaintiffs' injuries arose from "affirmative and outrageous" conduct and were not merely the result of a delay in payment of disability benefits.  Plaintiffs further argued that requiring the "industry" to pay for defendants' intentional conduct unjustly shifted the cost to Robin's employer, which had not been involved in the conduct underlying the allegations of the complaint.  Plaintiffs claimed that such a result was also inconsistent with the purpose of the Act.  Plaintiffs maintained that their allegations in the complaint were sufficient to state a claim for intentional infliction of emotional distress because they had alleged that defendants were in a position of authority over Robin, there was no legitimate purpose for defendants' actions, and defendants were aware that Robin was susceptible to emotional stress because of his disability.  Plaintiffs also argued that the Act did not bar their claims for vocational rehabilitation malpractice against CCM and EVR and that the "dual capacity doctrine" applied because defendants were providing Robin with actual treatment as opposed to a limited evaluation related to his employment.  

Following a hearing on defendants' motions, the trial court dismissed plaintiffs' complaint with prejudice, finding that the exclusivity provision of the Act barred plaintiffs' common law action.  The trial court did not specifically address whether the intentional infliction of emotional distress allegations were sufficient to state a cause of action.  This appeal followed.  

Plaintiffs contend that the trial court erred in dismissing their complaint with prejudice because their claims are not barred by the exclusivity provision of the Act.  Plaintiffs argue that Robin's "psychiatric damages" are not related to his employment because, due to his prior disabling back injury, he was not working at the time he suffered the psychiatric damages and, therefore, had "no employment with his previous employer."  They further claim that Robin's "psychological breakdown" was "entirely discrete" from his back injury and was caused by defendants' treatment of him during his rehabilitation.  Plaintiffs maintain that the vocational services and rehabilitation services Robin received were not designed to enable him to return to his previous employment and there was no continuing employment relationship.  Plaintiffs further argue that the Act does not insulate his former employer's insurers or agents from common law liability for intentional torts such as those causing his injuries.  They distinguish their claims for the injuries suffered by Robin from claims for injuries caused by "vexatious delay" of benefit payments, which they admit would be covered by the "exclusivity" provision of the Act.  

Defendant EVR contends that the exclusive remedy provision of the Act bars plaintiffs' claims, arguing that "[p]roblems with vocational services maintain the same character as problems presented by delays or terminations of disability payments and should be treated the same by this court."  EVR further argues that plaintiffs were required to exhaust all remedies before the Industrial Commission before bringing any claim in the circuit court.  

Defendant CCM also argues that the Act provides the exclusive means of any recovery for plaintiffs and, under the Act, plaintiffs' claims are barred.  CCM claims that Robin's alleged emotional distress arose from his employment because the injury occurred while he was receiving workers' compensation benefits for his original work-related injury.  CCM also maintains that the dual capacity doctrine does not apply to a party rendering services in connection with workers' compensation benefits.  CCM equates the facts of this case to those cases in which this court has held that the dual capacity doctrine does not apply to medical services rendered by an employer where the services are rendered in response to the employer's obligations under the Act.  State Farm's arguments are substantially similar to those made by EVR and CCM.  

Section 2--619 of the Illinois Code of Civil Procedure provides for the involuntary dismissal of an action where "the claim asserted against [a] defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2--619 (West 1998).  In a motion brought pursuant to section 2--619, the trial court must consider whether the defendant has presented facts which constitute an affirmative defense that could defeat the plaintiff's cause of action.  
Prodromos v. Poulos
, 202 Ill. App. 3d 1024, 1028, 560 N.E.2d 942 (1990).  Review of a trial court's dismissal of a complaint pursuant to section 2--619 is 
de
 
novo
.  
Metrick v. Chatz
, 266 Ill. App. 3d 649, 652, 639 N.E.2d 198 (1994).  We consider all well-pleaded facts as true, and dismissal is proper only if no facts exist that could entitle the plaintiff to recover.  
Griffin v. Fluellen
, 283 Ill. App. 3d 1078, 1083, 670 N.E.2d 845 (1996).  An appellate court can affirm a section 2--619 dismissal on any grounds supported by the record, regardless of the trial court's reasons.  
Ko v. Eljer Industries, Inc.
, 287 Ill. App. 3d 35, 39, 678 N.E.2d 641 (1997)
.  

Section 5(a) of the Act provides:

"(a) No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury."  820 ILCS 305/5(a)(West 1996).  

Section 18 of the Act provides:

"All questions arising under this Act, if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Commission."  820 ILCS 305/18.  

Section 19 of the Act, in relevant part, provides:

"Any disputed questions of law or fact shall be determined as herein provided:

***

(k) In cases where there has been unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under the Act equal to 50% of the amount payable at the time of such award."  820 ILCS 305/19(k)(West 1996).  

An injury is compensable under the Act if it "aris[es] out of and in the course of the employment."  
Unger v. Continental Assurance Co.
, 107 Ill. 2d 79, 85, 481 N.E.2d 684 (1985) (quoting the Act, 735 ILCS 305/2).  "Arising out of" refers to the causal connection between the employment and the accidental injury, which exists when the injury's origin is in some risk related to the employment.  
Unger
, 107 Ill. 2d at 85.  Whether the injury occurs "in the course of" employment depends on the time, place, and circumstances of the injury.  
Unger
, 107 Ill. 2d at 85.  An injury arises "in the course of" the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties, and while the employee is fulfilling those duties or is engaged in something incidental thereto.  
Unger
, 107 Ill. 2d at 85-86.  

Plaintiffs rely on 
Unruh v. Truck Insurance Exchange
, 498 P. 2d 1063 (Cal. 1972), in support of their argument that the exclusivity provision of the Act does not bar their claims for intentional conduct.  In 
Unruh
, the plaintiff suffered an injury to her back in the course of her employment and underwent four surgeries.  The defendant, the plaintiff's employer's workers' compensation carrier, hired two investigators to conduct surveillance of the plaintiff and determine the true extent of her disability.  The first investigator befriended the plaintiff, taking her to various social and recreational activities, while the second investigator secretly photographed the plaintiff.  The plaintiff alleged that she became emotionally interested in the investigator who had befriended her.  After the motion pictures taken by the second investigator were shown at a hearing on the plaintiff's workers' compensation claim, the plaintiff alleged that she suffered a physical and mental breakdown which required hospitalization.  

The 
Unruh
 plaintiff then filed a tort action against the defendant insurer and the two investigators alleging that the insurer negligently failed to control the investigators, she was the victim of assault and battery and intentional infliction of emotional distress, and that the defendants had conspired to commit these acts.  In a motion to dismiss the plaintiff's action, the defendants argued, in part, that the exclusivity provision of the California workers' compensation statute barred the plaintiff's claims.  The trial court agreed, and granted the defendants' motion.  

On appeal, the California Supreme Court
, relying primarily on the "dual capacity" doctrine, which holds that a party treating an injured worker in a manner independent of the injured worker's employment status may be liable to the injured worker outside the scope of the Act, held that an insurance carrier which was performing its proper role in the workers' compensation scheme shares the same immunity held by the employer from an injured worker's lawsuit.  The 
Unruh
 court therefore found that the plaintiff's negligence claim and conspiracy allegations, which were also based on negligence, were properly dismissed because mere negligence did not defeat the immunity.  The court further held, however, that the intentional tort counts, as well as the conspiracy allegations related to those counts, stated valid causes of action and should not have been dismissed based on its determination 
that even though an employer would be immune from a suit by an injured employee for the employer's intentional acts, under the dual capacity doctrine, the insurance carrier was not performing its proper role in the workers' compensation scheme when it participated in a deceitful course of conduct against the plaintiff and therefore would not be immune from a lawsuit based on such conduct.   

Unruh
 and the issues raised by plaintiffs here have been addressed in 
Larson's Workers' Compensation Law
 (
Larson
) (6 A. Larson & L. Larson, 
Larson's Workers' Compensation Law
 §104.05 (2000)).  
Although the analysis in 
Larson
 agrees with the result reached in 
Unruh
, 
Larson
 is critical of the California court's reliance on the dual capacity doctrine, specifically stating, "[T]he [
Unruh
] court's rationale is unfortunate because it does not face up to the issue whether an intentional nonphysical tort should be placed outside the reach of the exclusiveness provision.  By relying principally on the dual-capacity doctrine, it has produced a holding that appears to apply to only insurance carriers and not to employers, and it has stretched out of all reasonable compass the doctrine of dual-capacity." 6 
Larson
 §104.05(2), at 104-21.  
Larson
 instead focused on two main factors that the 
Unruh
 court could have used "to get around the exclusiveness clause": (1) that the plaintiff had two distinct injuries, 
i
.
e
., her work-related back injury and the second emotional injury which resulted from the defendants' intentional acts separated by a "long distance in time" from the first injury and (2) that the dominant feature of the tort claim was intangible emotional damage and not personal injury.  6 
Larson
 §104.05(2), at 104-25 to 104-26.  

Although we are not bound by the decision in 
Unruh
, we find that the issues raised in that case, and the analysis of those issues in 
Larson
, to be relevant to the facts alleged in the present case.  Plaintiffs have not alleged that defendants improperly delayed payment or wrongfully terminated Robin's benefits under the Act.  Plaintiffs have instead alleged, as in 
Unruh
, that defendants' intentional acts resulted in a second injury distinct from Robin's original work-related injury.  Plaintiffs also allege that Robin was emotionally damaged during his rehabilitation as opposed to in the course of his employment.  This is not a case involving allegations that the original injury was merely aggravated by defendants' conduct.  
Robin was not "engaged in the line of his duty" as an employee of Bade Appliance when he suffered the alleged emotional injuries.  Plaintiffs alleged that the emotional damage occurred after a long period of time had passed from the time of his original work-related injury and that defendants' conduct resulted in a separate intangible injury.  Robin was not injured pursuant to a risk he undertook on behalf on his employer.  He was, in fact, allegedly injured while attempting to find a new job.  The injury alleged in plaintiffs' complaint, therefore, did not arise in the course of Robin's employment because it resulted from allegedly intentional acts.  Additionally, defendants have not cited to any authority suggesting that the legislature intended the exclusivity provision of the Act to bar a common law action for injuries caused by this type of intentional conduct.  Accordingly, we find that both 
Unruh
 and the analysis in 
Larson
 support plaintiffs' argument that the Act does not preclude their intentional tort claims, and the trial court erred in dismissing their claims based on intentional conduct pursuant to the Act.  

Johnson v. Federal Reserve Bank of Chicago
, 199 Ill. App. 3d 427, 557 N.E.2d 328 (1990), also supports our disposition on this issue.  In 
Johnson
, the plaintiff filed a common law action against his employer, the defendant bank, for intentional infliction of emotional distress.  The plaintiff alleged that he was instructed by his superiors at the defendant bank to begin using various unauthorized procedures, among other improper acts, which compromised the confidentiality of various bank files and deceived customers and inspections by the Treasury Bureau.  The plaintiff claimed that his superiors retaliated against him when he refused and disclosed the procedures to internal auditors.  He alleged that his superiors harassed him for almost two years by threatening to fire him, giving him an excessive work load, denying him opportunities for advancement, undervaluing the quality of his work and giving him poor reviews, and undercutting his instructions to his direct subordinates.  
Johnson
, 199 Ill. App. 3d at 430.  He further alleged that, as a result, his mental and physical health deteriorated and he was forced to take a leave of absence.  The trial court subsequently dismissed the plaintiff's complaint.  

On appeal, the 
Johnson
 court reversed the trial court's dismissal of the plaintiff's complaint.  The 
Johnson
 court first found that although the defendant bank's alleged conduct, as stated above, was not extreme and outrageous 
per
 
se
, it subsequently became so because of the retaliatory and punitive nature of the defendant bank's conduct, the bank's position of authority over the plaintiff, the lack of any legitimate purpose for the conduct, and the fact that the conduct continued even after the defendant bank learned of the plaintiff's susceptibility to emotional distress.  
Johnson
, 199 Ill. App. 3d at 432.  

The 
Johnson
 court also found that the Act provides the exclusive remedy for "accidental" injuries in the workplace and, even though section 19(k) included a remedy for intentional infliction of emotional distress, that remedy only applied to vexatious delay in handling claims under the Act.  Specifically, the 
Johnson
 court stated that "[i]ntentional torts, such as intentional infliction of emotional distress apart from vexatious delay, fall outside the scope of the Act as they are not accidental and do not arise from the conditions of the employment."  
Johnson
, 199 Ill. App. 3d at 433.  Although 
Johnson
 involved intentional conduct by the plaintiff's employer, as opposed to intentional conduct by the employer's insurer and its agents as in this case, 
Johnson
 also supports our finding that such intentional conduct was not intended to be covered by the Act and that plaintiffs' claims here, based on this conduct, are not barred by the exclusivity provision of the Act.   

Defendants reliance on 
Robertson v. Travelers Insurance Co.
, 95 Ill. 2d 441, 448 N.E.2d 866 (1983), 
Langerstrom v. Dupree
, 185 Ill. App. 3d 1020, 542 N.E.2d 73 (1989), and 
Unger
, in support of their argument on this issue, 
is misplaced.  
Robertson
 does not address the direct issue in the present case, 
i
.
e
., whether a plaintiff may file a common law action based on intentional torts allegedly committed by his employer's workers' compensation carrier and its agents.  
Robertson
, and the cases expressing the "majority view" upon which that case relies, dealt with unreasonable or vexatious delay in the payment of benefits under the Act.  Moreover, the 
Robertson
 court specifically stated that it was expressing no view as to whether a plaintiff might have a claim for "emotional distress resulting from outrageous activity apart from the delay" considered by the California Supreme Court in 
Unruh
.  In plaintiffs' complaint here, plaintiffs did not make a claim based on allegations of delay of payment of benefits under the Act.  Plaintiffs alleged that Robin was injured by the allegedly excessive and useless interviews that he was required to participate in as part of his rehabilitation and training.  These facts, therefore, distinguish this case from those in 
Robertson
.  

In 
Lagerstrom
, the plaintiff injured his back at work and received benefits under the Act.  His injury was treated by his own physician.  The plaintiff was eventually examined by the defendant physician at the request of his employer's workers' compensation carrier to determine his fitness to return to work.  The plaintiff was aware of the purpose of the examination and that it could affect his benefits under the Act.  The defendant determined that the plaintiff could return to work, but based on the advice of his own doctor, the plaintiff refused to return.  The workers' compensation carrier terminated the plaintiff's benefits under the Act.  Several months later, the plaintiff was again examined by the defendant at the insurer's request, and the defendant again stated that the plaintiff was fit to return to work.  Although the plaintiff did not feel capable of returning to work, he returned against the advice of his own doctor and subsequently suffered additional work-related injuries.  The plaintiff sued the defendant for medical malpractice for having "negligently recommended that [the] plaintiff return to work."  
Lagerstrom
, 185 Ill. App. 3d at 1021-22.  He also alleged wilful and wanton misconduct.  
The defendant subsequently filed a motion for summary judgment, arguing that the plaintiff's action was barred by the exclusivity provision under the Act, which the trial court granted.  

The 
Lagerstrom
 court affirmed the trial court's grant of summary judgment to the defendant because the Act was the exclusive remedy for the plaintiff to attempt to recover damages from the defendant.  The court stated:

"If [the] plaintiff had not sustained his original on-the-job injuries, [the] plaintiff would not have been later required to submit to [the] defendant's examination as directed by the [insurer].  As a result, [the] plaintiff's subsequent work-related injuries, allegedly occasioned by [the] defendant's negligence, would not have occurred but for [the] plaintiff's initial on-the-job injuries."  
Lagerstrom
, 185 Ill. App. 3d at 1022-23.  

Also, in 
Unger
, the plaintiff's employers required him to undergo an examination in the company clinic.  The physician, a co-employee of the plaintiff, failed to diagnose the plaintiff's lung cancer which was not related to his employment.  The plaintiff filed a common law malpractice action against the physician and his employers for the injury, 
i
.
e
., the aggravation of the nonwork-related cancer.  The 
Unger
 court affirmed the trial court's dismissal of the plaintiff's complaint because the Act provided the exclusive remedy for the plaintiff.  The court found that the injury occurred "in the course of" the plaintiff's employment because the examination occurred in a company clinic during working hours and the plaintiff was a co-employee of the physician.  The injury also "arose out of" the plaintiff's employment because, even though he did not attend the company clinic for a work-related injury, there was a "causal connection" between the alleged injury and the employment as the examination was required for continued employment.  
Unger
, 107 Ill. 2d at 87. 

Although, as in 
Lagerstrom
 and 
Unger
, Robin would not have received the benefits and services of defendants "but for" his initial work-related injury and employment with Bade Appliance, such "but for" causation does not represent the test to determine whether a common law claim is barred by the Act, and both of those cases are otherwise distinguishable from the present case.  As stated above, the injury must arise out of the employment to fall under the Act.  In 
Lagerstrom
, both the plaintiff's initial injury and subsequent injuries occurred while the plaintiff was actually performing his work duties for his employer.  Here, the allegations of the complaint state that Robin's subsequent "emotional" injury occurred during rehabilitation and job placement and was distinct from the physical injury that prevented Robin from returning to his former employment.  Robin, therefore, was not injured while taking a work-related risk to serve his employer, and he, in fact, was looking for a new job.  In 
Unger
, the plaintiff was injured while participating in an examination at his work, during working hours by a co-employee, and for the purpose of continuing his employment.  Again, in the present case, Robin could not return to his former job and was looking for a new job when he was injured.  Defendants' allegedly intentional conduct was not related to either Robin's return to work with Bade Appliance or his continued employment with Bade Appliance.  

Although plaintiffs' claims here, based on intentional tort, fall outside the scope of the Act, we agree that plaintiffs' claims based on negligence or malpractice in defendants' administration of workers' compensation benefits, 
i
.
e
., counts I through III and counts VII through IX, are barred by the exclusivity provision of the Act.  Such claims are within the scope of the Act, which as stated in 
Johnson
 covers "accidental" injuries arising from the conditions of employment. Plaintiffs' allegations that defendants' actions were negligent or constituted malpractice do not rise to the same level as allegations characterizing defendants' actions as intentional, and defendants are entitled to protection from plaintiffs' negligence and malpractice claims under the exclusivity provisions of the Act.  

We also find that defendants here were not acting in a "dual capacity" or treating Robin independently from their obligations as benefit providers on behalf of his employer.  Under the dual capacity doctrine, an employer or its agent protected by the exclusive remedy provision of the Act may become liable in tort if the employer or its agent operates in a second capacity that creates obligations independent of those imposed upon it as an employer.  
Guerino v. Depot Place Partnership
, 273 Ill. App. 3d 27, 32, 652 N.E.2d 410 (1995).  The dual capacity doctrine does not apply 
when a defendant's duties in its two capacities are so intertwined that its conduct in the second role does not generate any obligations that are unrelated to the duties flowing from its first role as employer or agent of the employer.  
Guerino
, 273 Ill. App. 3d at 32.  Plaintiffs' allegations in their complaint do not state that defendants acted in any second capacity toward Robin which would have created  obligations to him other than those related to their duties as workers' compensation benefit providers on behalf of his employer.  Because there was no dual capacity here, the trial court properly dismissed plaintiffs' negligence and malpractice claims. 

Plaintiffs next contend that the allegations in their complaint were sufficient to state a cause of action for intentional infliction of emotional distress.  Plaintiffs argue that defendants were in a position of power over Robin, and state, "[A] finder of fact could reasonably conclude that requiring a disabled person *** to apply for 100 jobs a month in person, knowing that nothing will result from this Sisyphean process except failure, is outrageous, extreme and atrocious in and of itself."  They claim that defendants' actions had no legitimate purpose and that defendants were aware of Robin's susceptibility to emotional distress based on his disability.  Plaintiffs also maintain that defendants are not relieved from liability for their intentional torts merely because Robin did not take "affirmative steps to avoid exposure to defendants' injurious conduct."  

The record indicates that the trial court did not address this issue, having found that dismissal was required pursuant to the provisions of the Act.  We therefore remand this cause to the trial court for reinstatement of plaintiffs' counts alleging intentional infliction of emotional distress and for the trial court to consider whether the allegations of the complaint sufficiently plead such claims.  Even if plaintiffs' factual allegations are insufficient to state claims based on intentional infliction of emotional distress, plaintiffs should be allowed an opportunity to replead their cause of action.  

For the reasons stated, we affirm the trial court's dismissal of counts I through III and counts VII through IX of plaintiffs' complaint, which are based on negligence and malpractice, and reverse the dismissal of counts IV through VI and counts X through XII of the complaint, which are based on intentional infliction of emotional distress.  We also remand this cause to the circuit court for consideration of whether plaintiffs' factual allegations of intentional infliction of emotional distress are sufficient to state a cause of action, with the opportunity to replead if they are insufficient.  

Affirmed in part, reversed in part, and remanded with directions.  

HALL, P.J., and WOLFSON, J., concur.  

FOOTNOTES
-6:
Plaintiffs' original and first amended complaints are not at issue in this appeal.