656 S.E.2d 55

**Mary H. WETZEL, Individually and as Executrix of the Estate of Robert H. Wetzel, Deceased, Appellant**

v.

**EMPLOYERS SERVICE CORPORATION OF WEST VIRGINIA, Appellee.**

**No. 33337.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 10, 2007.

Decided Nov. 8, 2007.

Dissenting Opinion of Justice Starcher Nov. 9, 2007.

Concurring Opinion of Justice Maynard Dec. 5, 2007.

---

Christopher J. Regan, James B. Stoneking, Bordas & Bordas, Wheeling, WV, for Appellant.

Thomas V. Flaherty, Tammy R. Harvey, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for Appellee.

PER CURIAM:

Mary H. Wetzel (hereinafter "Mrs. Wetzel"), appellant/plaintiff below, individually and as executrix of the estate of her deceased husband Robert H. Wetzel, appeals from an order of the Circuit Court of Marshall County granting summary judgment in favor of Employers Service Corporation of West Virginia, appellee/defendant below (hereinafter "ESC"). In this proceeding, Mrs. Wetzel contends that the circuit court committed error in finding that (1) the workers' compensation statutes granted ESC immunity from liability, and (2) ESC was not in the business of insurance for purposes of her statutory bad faith claim. After a thorough review of the briefs and record, and having heard the arguments of the parties, we affirm the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The decedent, Mr. Wetzel, was employed as a truck driver for Chemical Leaman Tank Lines (hereinafter "Chemical Leaman") from 1983 until his death in 1995. During the course of his employment, Mr. Wetzel was exposed to a chemical called Toluene Diisocyanate (hereinafter "TDI"). As a result of the exposure to TDI, Mr. Wetzel developed pulmonary complications and filed a workers'

compensation claim in 1992. The Workers' Compensation Commissioner issued an order finding the claim compensable and awarded Mr. Wetzel temporary total disability benefits.

At the time that Mr. Wetzel's pulmonary complications were ruled compensable, Chemical Leaman was a self-insured employer for purposes of workers' compensation. Chemical Leaman had a contractual agreement with ESC, dating back to 1987, whereby ESC was made the administrator for Chemical Leaman's workers' compensation program. Under the agreement, ESC was responsible for, among other things, processing and paying all valid workers' compensation related payment requests.

During the course of Mr. Wetzel's treatment for his pulmonary complications, ESC received a total of 139 requests for payment on his claim.[1] ESC paid out a total of $12,083.41 on the claim.[2] However, ESC objected to payment of 26 of the 139 payment requests.[3] Out of the 26 payment denials, 16 denials were made for physician office visits that did not involve the compensable injury.[4] Four of the 26 payment denials involved medications that were not authorized for the compensable injury. The remaining six payment denials involved duplicative charges. The actual amount of the 26 payment denials totaled $662.94. Although Mr. Wetzel had a right to file an administrative protest to each of the payment denials, he failed to make an administrative protest to any of the payment denials.[5]

On September 5, 1995, Mr. Wetzel died.[6] A year later, on September 9, 1996, Mrs. Wet-

---

1. The circuit court's summary judgment order listed only 79 payment requests.

2. The circuit court's summary judgment order found that ESC paid out a total of $11,281.00 on the claim.

3. The circuit court's summary judgment order listed only 19 payment requests as being denied.

4. The physician who submitted the 16 requests for payment testified that, through an error in his office, some of the requests were submitted with the wrong billing code. Even so, none of the office visit payment requests were resubmitted for payment.

5. The applicable regulation provides that a self-insured employer may deny payment "for those services or items that have [no] direct relationship to the work related injury or disease[.]" 85 C.S.R. § 85–20–9.9.1. The statutory procedures for protesting benefit denials are set out in W. Va.Code § 23–5–1, *et seq.*

6. The record does not disclose the exact cause of death. However, it appears that this Court awarded Mrs. Wetzel workers' compensation widow's benefits during an administrative proceeding. Consequently, it would appear that TDI was a contributing factor to Mr. Wetzel's death.

zel filed the instant action against ESC. The complaint alleged that ESC's denial of the 26 payment requests contributed to Mr. Wetzel's death. The legal theories relied upon were negligence, intentional infliction of emotional distress and statutory bad faith settlement of claims. After a period of extensive discovery, ESC filed a motion for summary judgment. By order entered on August 14, 2006, the circuit court granted ESC's motion for summary judgment. In doing so, the circuit court found that (1) ESC was an agent of Chemical Leaman and, as such, enjoyed immunity from common law tort theories, and (2) ESC was not subject to a statutory bad faith claim. It is from these rulings that Mrs. Wetzel appeals to this Court.

## II.

## STANDARD OF REVIEW

We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In conducting a *de novo* review, this Court applies the same standard for granting summary judgment that a circuit court must apply. *United Bank, Inc. v. Blosser*, 218 W.Va. 378, 383, 624 S.E.2d 815, 820 (2005). Pursuant to that standard, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. Mindful of these principles, we address the issues raised on appeal.

## III.

## DISCUSSION

Mrs. Wetzel contends that ESC does not have immunity under the workers' compensation statutes because it is not an agent of Chemical Leaman. In the alternative, Mrs. Wetzel argues that, if ESC is an agent of Chemical Leaman, she may still proceed against ESC under her intentional tort theory. Finally, Mrs. Wetzel contends that, for purposes of her bad faith claim, ESC is in the business of insurance and therefore her bad faith claim may proceed. We will address each issue separately.

## A. ESC is an Agent of Chemical Leaman

All parties agree that under our workers' compensation statutes, an agent of an employer is granted immunity from suit for non-deliberate intent conduct that injures or causes the death of an employee. Specifically, the immunity to employers is set out in W. Va.Code § 23-2-6 (2003) (Repl. Vol. 2005) in part, as follows:

> Any employer subject to this chapter who subscribes and pays into the workers' compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided in this section is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which the employer is not in default in the payment of the premiums or direct payments and has complied fully with all other provisions of this chapter.

The extension of employer immunity to agents and others is set out in W. Va.Code § 23-2-6a (1949), (Repl. Vol. 2005) as follows:

> The immunity from liability set out in the preceding section shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.

In Syllabus point 4 of *Henderson v. Meredith Lumber Co., Inc.*, 190 W.Va. 292, 438 S.E.2d 324 (1993), this Court summarized the above statutes as follows:

> W. Va.Code, 23-2-6a [1949] extends the employer's immunity from liability set forth in W. Va.Code, 23-2-6 [2003] to the employer's officer, manager, agent, repre-

sentative or employee when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.

Mrs. Wetzel contends that under our decision in *Deller v. Naymick*, 176 W.Va. 108, 342 S.E.2d 73 (1985), ESC is not an agent of Chemical Leaman. On the other hand, ESC argues that *Deller* does not address the issue of who may be an agent for workers' compensation purposes. We agree with the position advocated by ESC.

In *Deller*, the plaintiff sued a doctor who worked out of a facility provided by the employer. The trial court certified questions to this Court asking that we determine whether the doctor was an employee of the employer, and therefore immune from suit. This Court found that the doctor was an employee and, in doing so, formulated the following test for determining whether a professional person is an employee of an employer:

> A professional person is an "employee" for workers' compensation purposes when he or she provides his or her services "to an employer largely to the exclusion of otherwise special employment, for a certain fixed and determined period, at a regular salary, and hold[s] [himself or herself] in readiness at all times to serve [his or her] employer[.]"

Syl. pt. 1, *Deller*, 176 W.Va. 108, 342 S.E.2d 73, (quoting *West Virginia Coal & Coke Corp. v. State Comp. Comm'r*, 116 W.Va. 701, 704, 182 S.E. 826, 828(1935)). Clearly, *Deller's* test for determining whether a professional person is an employee of an employer has no relevancy to determining whether ESC is an agent of Chemical Leaman.

■■ The definition of an agent is not provided by W. Va.Code § 23-2-6a. In Syllabus point 4 of *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars of the United States*, 144 W.Va. 137, 107 S.E.2d 353 (1959), we held that "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." *See* Syl. pt. 1, *Thomas v. Firestone Tire & Rubber Co.*, 164 W.Va. 763, 266 S.E.2d 905 (1980) ("In the

absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings."). Prior decisions of this Court have addressed the meaning of "agent." In Syllabus point 3 of *State ex rel. Key v. Bond*, 94 W.Va. 255, 118 S.E. 276 (1923), we stated, in part, that "[a]n agent in the restricted and proper sense is a representative of his principal in business or contractual relations with third persons[.]" *Accord* Syl. pt. 3, *Thomson v. McGinnis*, 195 W.Va. 465, 465 S.E.2d 922 (1995). We have also said that

> [a]n agent is one who represents another, called the principal, in dealings with third persons. He is one who undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account of it.

*State ex rel Clark v. Blue Cross Blue Shield of West Virginia, Inc.*, 203 W.Va. 690, 714, 510 S.E.2d 764, 788 (1998) (quoting 1A Michie's Jurisprudence *Agency* § 2, at 666 (1993)). *See Warden v. Bank of Mingo*, 176 W.Va. 60, 64, 341 S.E.2d 679, 683 (1985) ("The common law definition of an agent [is] a person authorized by another to act for him[.]").

■ Under the precedents of this Court defining the meaning of "agent", we have no hesitancy in finding that ESC was an agent of Chemical Leaman for workers' compensation purposes. The record is clear. As a self-insured employer, Chemical Leaman had a statutory duty to provide for processing and making payments on workers' compensation claims that were found compensable. In 1987, Chemical Leaman entered into an agreement with ESC that gave ESC the responsibility of carrying out Chemical Leaman's statutory duty to process and make payments for workers' compensation claims. Consequently, the circuit court correctly found that "ESC acted in place of or conducted business on behalf of Chemical Leaman and was, therefore an agent or representative of Chemical Leaman." (Internal quotation marks omitted).

### B. Mrs. Wetzel's Intentional Tort Theory Is Not a Recognized Cause of Action under the Workers' Compensation Statutes

■ Mrs. Wetzel has asserted that even if ESC is an agent of Chemical Leaman, she

may still maintain a cause of action against ESC for intentionally refusing to pay a total of $662.94 in claims.[7] We disagree.

 The Legislature has specifically provided in W. Va.Code § 23–4–2(d)(2) (2005) (Repl. Vol. 2005) the type of intentional tort action that may be brought to defeat the immunity afforded to employers and their agents. The statutory intentional tort is called "deliberate intention." We held in Syllabus point 1 of *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), that "[t]he statute creating a legislative standard for loss of employer immunity from civil liability for work-related injury to employees found in W. Va.Code Sec. 23–4–2 [2005] essentially sets forth two separate and distinct methods of proving 'deliberate intention.'" The two deliberate intent causes of action have been summarized by this Court as follows:

7. We must point out that this issue, as argued in Mrs. Wetzel's brief, is not the intentional tort theory alleged in her complaint, *i.e.*, intentional infliction of emotional distress. In Syllabus point 6 of *Harless v. First National Bank In Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982), we set out the elements of an intentional infliction of emotional distress claim as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Mrs. Wetzel's brief failed to even mention the elements of this cause of action. Even so, given the fact that ESC has addressed Mrs. Wetzel's unnamed novel intentional tort theory in its brief, we will address the matter on its merits. *See* Syl. pt. 3, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998) ("When a [party] assigns an error . . for the first time on direct appeal, the [opposing party] does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, this Court may, in its discretion, review the merits of the assignment of error.").

Mrs. Wetzel does not contend that her negligence cause of action is still viable upon finding that ESC is an agent of Chemical Leaman.

8. Following our decision of this case, the Legislature recodified this section. The relevant text is now set forth at W. Va.Code § 23–4–2(d)(2)(i) (2005) (Repl. Vol. 2005).

9. The deliberate intent cause of action under W. Va.Code § 23–4–2(d)(2)(i) is as follows:

To properly plead a prima facie case under W. Va.Code § 23–4–2(c)(2)(i) (1994)[8], the statute requires an employee set out *deliberate intention* allegations. Under the statute, *deliberate intention* allegations may only be satisfied where it is alleged an employer acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury.

Syl. pt. 9, *Tolliver v. Kroger Co.*, 201 W.Va. 509, 498 S.E.2d 702 (1997) (footnote added) (finding assault and battery not recognized as cause of action against employer by employee).[9]

To establish "deliberate intention" in an action under W. Va.Code § 23–4–2(c)(2)(ii) (1983)[10], a plaintiff or cross-claimant must offer evidence to prove each of the five specific statutory requirements.

Syl. pt. 2, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991) (footnote added).[11]

It is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct.

10. This section also has been recodified and is now located at W. Va.Code § 23–4–2(d)(2)(ii) (2005) (Repl. Vol. 2005).

11. The deliberate intent cause of action under W. Va.Code § 23–4–2(c)(2)(ii) is as follows:

The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-

Mrs. Wetzel failed to plead in her complaint or argue before this Court a deliberate intention cause of action against ESC as provided by W. Va.Code § 23–4–2(d)(2). Instead, in this appeal Mrs. Wetzel contends that this Court should recognize a cause of action against ESC for intentionally refusing "to honor and timely pay workers' compensation benefits." To support this alleged cause of action, Mrs. Wetzel cites to our decision in *Persinger v. Peabody Coal Co.*, 196 W.Va. 707, 474 S.E.2d 887 (1996), wherein this Court created a cause of action against an employer for engaging in fraud to deny an employee workers' compensation benefits. Insofar as Mrs. Wetzel did not allege fraud against ESC in her complaint nor in her brief on appeal, we do not find *Persinger* applicable. Further, *Persinger* actually supports ESC's position that a cause of action for nonfraudulently contesting a claim is not actionable. We made this point quite clear in *Persinger* when we indicated that, "[i]n recognizing the existence of this type of [fraud] action, we do not wish to open a Pandora's box of litigation, *nor do we wish to infringe upon an employer's right to contest an employee's claim*" *Persinger*, 196 W.Va. at 717, 474 S.E.2d at 897 (emphasis added).

known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

12. As we pointed out earlier, there is an administrative remedy available for an employee to challenge the denial of a medical benefit.

Consequently, we decline to recognize the cause of action urged by Mrs. Wetzel.[12] *See Bias v. Eastern Associated Coal Corp.*, 220 W.Va. 190, 640 S.E.2d 540 (2006) (declining to recognize a cause of action against an employer for a mental-mental claim); *State ex rel. Darling v. McGraw*, 220 W.Va. 322, 647 S.E.2d 758 (2007) (same); *State ex rel. City of Martinsburg v. Sanders*, 219 W.Va. 228, 632 S.E.2d 914 (2006) (immunity from liability afforded to employers protects against awards of medical monitoring damages based on common law tort theories). In sum, the circuit court properly found that Mrs. Wetzel's tort theories of liability against ESC were precluded by the immunity granted under W. Va.Code § 23–2–6a.[13]

## C. ESC is not Engaged in the Business of Insurance for Purposes of the West Virginia Unfair Trade Practices Act

The final issue presented by Mrs. Wetzel is her contention that the circuit court committed error in finding that she could not maintain a cause of action against ESC under the West Virginia Unfair Trade Practices Act (hereinafter "the Act").[14] Mrs. Wetzel takes the position that ESC is in the "business of insurance." Therefore, the Act can be en-

13. Ms. Wetzel also cited to a number of cases from other jurisdictions to support her position. Those cases are not persuasive because of statutory and factual distinctions. *See Hough v. Pacific Ins. Co.*, 83 Hawai'i 457, 927 P.2d 858 (1996) (statutory and factual distinctions); *Johnson v. Federal Reserve Bank of Chicago*, 199 Ill.App.3d 427, 145 Ill.Dec. 558, 557 N.E.2d 328 (1990) (case did not involve claim for workers' compensation); *Weber v. State*, 635 So.2d 188 (La.1994) (statutory and factual distinctions); *Leathers v. Aetna Cas. & Sur. Co.*, 500 So.2d 451 (Miss.1986) (statutory and factual distinctions); *Falline v. GNLV Corp.*, 107 Nev. 1004, 823 P.2d 888 (1991) (statutory distinctions); *Matter of Certification of a Question of Law from the United States Dist. Court, Dist. of South Dakota, Western Div.*, 399 N.W.2d 320 (S.D.1987) (factual distinctions). Mrs. Wetzel also cited to the decision in *Soto v. Royal Globe Insurance Corp.*, 184 Cal.App.3d 420, 229 Cal.Rptr. 192 (1986). However, that case is actually consistent with this Court's decision, even though the opinion discusses exceptions that permit an action based upon the uniqueness of California's workers' compensation statutes.

14. *See* W. Va.Code § 33–11–1, *et seq.*

forced against it for bad faith refusal to pay claims in the amount of $662.94. ESC argues that it is not an insurance company nor is it in the business of insurance. We agree with ESC's argument.[15]

To begin, we observe that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "Once the legislative intent underlying a particular statute has been ascertained, we proceed to consider the precise language thereof." *State ex rel McGraw v. Combs Srvs.*, 206 W.Va. 512, 518, 526 S.E.2d 34, 40 (1999). Further, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

The purpose of the Act, as set out in W. Va.Code § 33-11-1 (1974) (Repl. Vol. 2006), "is to regulate trade practices in the business of insurance ... by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." The Act sets out and defines unfair methods of competition and unfair or deceptive acts or practices in detail in W. Va.Code § 33-11-4 (2002) (Repl. Vol. 2006). The Act does not provide a specific definition for "insurer." However, other provisions of the Insurance Code do address the matter. W. Va.Code § 33-1-2 (2005) (Repl. Vol. 2006) states that an "[i]nsurer is every person engaged in the business of making contracts of insurance." Further, W. Va.Code § 33-1-1 (1957) (Repl. Vol. 2006) defines insurance as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies."

In this proceeding, Mrs. Wetzel does not contend that ESC is an insurer. In fact,

Mrs. Wetzel has conceded that "ESC is not an insurer." Even so, Mrs. Wetzel argues that she can maintain her action against ESC under the Act because ESC "is engaged in the business of insurance." To support this argument Mrs. Wetzel asserts that "the claims handling activities which ESC performs on a daily basis constitute the business of insurance."

ESC argues that if merely processing workers' compensation payment claims constitutes the business of insurance, then every self-insured employer that processes its own claims, as opposed to relying on a third party administrator, would be in the business of insurance and subject to liability under the Act. ESC cites to the decision in *Hawkins v. Ford Motor Co.*, 211 W.Va. 487, 566 S.E.2d 624 (2002), for the proposition that self-insured employers that process their own claims are not subject to a cause of action under the Act.

The decision in *Hawkins* involved an attempt by the plaintiffs to amend their complaint to add a bad faith claim against the defendant, Ford Motor Company. The plaintiffs in *Hawkins* contended that the defendant acted in bad faith in refusing to settle a claim involving a defective automobile that was destroyed by fire. At the time of the incident, the defendant was self-insured for general liability up to a certain amount. The trial court found that the Act did not apply to a self-insured entity and therefore denied the motion to amend the complaint. On appeal, this Court agreed with the trial court that a bad faith claim could not be maintained against the defendant. Specifically this Court held that "[a] self-insured entity is not in the business of insurance." *Hawkins*, 211 W.Va. at 492, 566 S.E.2d at 629. We went on to formulate the following syllabus point:

The Unfair Trade Practices Act, W. Va. Code §§ 33-11-1 to 10, and the tort of bad faith apply only to those persons or entities and their agents who are engaged in the business of insurance.

---

15. Although Mrs. Wetzel argues that ESC is in the business of insurance, her brief describes ESC's business as follows:

ESC is a multi-state corporation with offices in West Virginia, Pennsylvania and Kentucky. It offers a wide range of professional services to businesses including nursing and medical consulting, loss control management, as well as administering self-insured programs.

Syl. pt. 2, *Hawkins,* 211 W.Va. 487, 566 S.E.2d 624.

Although we agree with Mrs. Wetzel that *Hawkins* is factually distinguishable from the instant case, we agree with ESC that the outcome must be the same. To hold otherwise would lead to an absurd result. For example, if this Court followed the logic of Mrs. Wetzel, we would have a rule of law which holds that an employer that is self-insured and processes its own claims, for both general liability and workers' compensation liability, cannot be sued as an insurer under the Act for bad faith settlement of general liability claims because of *Hawkins,* but may be sued as an insurer under the Act for bad faith settlement of workers' compensation claims. There is simply no tenable legal justification for such a different outcome. *See Stafford EMS, Inc. v. J.B. Hunt Transp., Inc.,* 270 F.Supp.2d 773, 778–79 (S.D.W.Va.2003) ("Inasmuch as West Virginia law is clear that a self-insured entity, such as J.B. Hunt, is not liable for bad faith, either statutory or common law, [plaintiff] can receive no relief from J.B. Hunt on those grounds. Moreover, inasmuch as the court has determined that independent adjusters retained by a self-insured entity have no greater liability for bad faith claims than that of the self-insured entity, [plaintiff] is not entitled to relief from Custard or Robertson."). Nor do we believe the Legislature intended the Act to apply to entities like ESC that simply process claims for self-insured workers' compensation employers.[16] Therefore, we affirm the trial court's dismissal of Mrs. Wetzel's bad faith claim.

## IV.

## CONCLUSION

In view of the foregoing, we affirm the trial court's order granting summary judgment in favor of ESC.

Affirmed.

Justices STARCHER and ALBRIGHT dissent and file dissenting opinions.

Justice MAYNARD concurs and files a concurring opinion.

ALBRIGHT, Justice, dissenting:

I respectfully dissent from the majority opinion and would hold that the trial court erred in granting summary judgment to Employers Service Corporation (hereinafter "ESC"). In my view, ESC is not immune from liability to Mrs. Wetzel in this case, and ESC is subject to liability under the Unfair Trade Practices Act. *See* W.Va.Code § 33–11–1, et seq. ESC is a third-party administrator of a self-insured employer, Chemical Leaman. The relationship between Chemical Leaman and ESC was established subsequent to the *election* of Chemical Leaman to operate as a self-insured employer under West Virginia Workers' Compensation law. In its capacity as a third-party administrator, ESC seeks to be sheltered from liability for its actions in this case, based upon both its perception of its role as an entity not engaged in the business of insurance and its belief that it is shielded from liability by statutory immunities. It has prevailed in its endeavor to convince a majority of this Court that its arguments are correct. Therefore, rules the majority opinion, ESC has been protected from liability.

This Court held in *Taylor v. Nationwide Mutual Insurance Co.,* 214 W.Va. 324, 589 S.E.2d 55 (2003), that an insurance adjuster could be held liable for its actions under the Unfair Trade Practices Act. 214 W.Va. at 326, 589 S.E.2d at 57. As a practical matter, the functions performed by ESC as a third-party administrator are essentially those of an insurance adjuster. The majority in this case apparently accepts neither the concept

**16.** Under a new provision of the current workers' compensation statutes, the Legislature has expressly stated that a violation of the Insurance Code, of which the Act is a part, by entities like ESC cannot be the basis of a civil action by an employee. *See* W. Va.Code § 23–2C–21 (a) (2005) ("No cause of action may be brought or maintained by an employee against a private carrier or a third-party administrator, or any employee or agent of a private carrier or third-party administrator, who violates any provision of this chapter or chapter thirty-three [§§ 33–1–1 *et seq.*] of this code."). This statute is not applicable to the instant case because it was enacted after the litigation began.

of self-insured employers' workers' compensation as the business of insurance nor the concept of ESC serving the role of an adjuster. Yet, in the most fundamental sense, an employer electing to be self-insured provides the insurance,[1] and the entity hired to administer the self-insured employer's workers' compensation cases provides the role of an adjuster. The majority deprives Mrs. Wetzel of a remedy based upon the labyrinth of relationships among the business entities and based upon the manner in which the employer, Chemical Leaman, elected to establish its workers' compensation coverage.

The potential tort liability of a workers' compensation insurer for willful or reckless disregard of the obligation to pay benefits is not a novel concept. It has been recognized by several jurisdictions for many years. In *Catron v. Tokio Marine Management, Inc.*, 90 Hawai'i 407, 978 P.2d 845 (1999), for instance, the court found that a bad faith claim against an employer's workers' compensation insurer is not barred by the exclusive remedy provisions. The fact that an employer is self-insured does not affect the underlying resolution; common law tort liability still exists. In *McIlravy v. North River Insurance Co.*, 653 N.W.2d 323 (Iowa 2002), the Iowa court held that a "self-insured employer or employer's workers' compensation carrier may be penalized for a delay in payment of benefits ... by a private cause of action for first-party bad faith." 653 N.W.2d at 328–29. The *McIlravy* court explained that "[b]ad faith claims are applicable to workers' compensation insurers because they hold the dis-

cretionary power to affect the statutory rights of workers, which clearly reflects their obligation to act in good faith in the exercise of this authority." 653 N.W.2d at 329.

In *Sizemore v. Continental Casualty Co.*, 142 P.3d 47 (Okla.2006), the court found that where an insurer fails to act with good faith and fair dealing in paying an award, the claimant has a common law action for bad faith, and such action can be brought against the workers' compensation insurer or a self-insured employer. It is axiomatic that an insurer has an implied duty of good faith and fair dealing in its relationship with the insured. As the court in *Sizemore* observed, "[w]orkers ... enjoy both a contractual and a statutory status as third party beneficiaries of a workers' compensation insurance agreement." 142 P.3d at 51. "Thus, the right to enforce the insurance agreement, and the attendant duty of good faith and fair dealing implied in that contract, belongs to the injured worker. This is true whether the insurer is an insurance company or a self-insured employer who voluntarily assumes insurer status." *Id.* (footnote omitted).

In accord with these well-reasoned cases, I believe that Mrs. Wetzel should be entitled to maintain a bad faith action against ESC under the circumstances of this claim which occurred prior to the 2005 enactment of West Virginia Code § 23–2C–21(a) (2005), providing as follows: "No cause of action may be brought or maintained by an employee against a private carrier or a third-party administrator, or any employee or agent of a

---

1. Workers' compensation has been treated as a type of insurance in opinions of this Court. In *State ex rel Abraham Linc. Corp. v. Bedell*, 216 W.Va. 99, 602 S.E.2d 542 (2004), for instance, this Court quoted, with approval, from an explanation of the philosophy behind the formation of the workers' compensation system, as follows:

 "That philosophy has commonly been described as a *quid pro quo* on both sides: in return for the purchase of *insurance against job-related injuries,* the employer receives tort immunity; in return for giving up the right to sue the employer, the employee receives swift and sure benefits." *Dominion Caisson Corp. v. Clark,* 614 A.2d 529, 532–33 (D.C.1992) *quoting Meiggs v. Associated Builders, Inc.,* 545 A.2d 631, 634 (D.C.1988), *cert. denied,* 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989).

 216 W.Va. at 103 n. 7, 602 S.E.2d at 546 n. 7 (emphasis supplied). Moreover, the statutory scheme of this state envisions Insurance Commissioner review of self-insurers. West Virginia Code § 23–2–9(a)(3) currently provides: "An annual review of each self-insurer's continuing ability to meet its obligations and the requirements of this section shall be made by the Insurance Commissioner." The third-party administrator is also controlled by the Insurance Commissioner, to the extent stated in West Virginia Code § 23–2–9(i): "An employer may not hire any person or group to self-administer claims under this chapter as a third-party administrator unless the person or group has been determined to be qualified to be a third-party administrator by the Insurance Commissioner pursuant to rules adopted by the board of managers or Industrial Council."

private carrier or third-party administrator, who violates any provision of this chapter or chapter thirty-three [§§ 33–1–1 et seq.] of this code."

In addition to my belief that Mrs. Wetzel has a claim against ESC under the Unfair Trade Practices Act, I join the dissent of Justice Starcher on the issue of the absence of statutory immunity. The immunity conferred upon an employer is premised upon the occurrence of an accidental personal injury arising out of and in the course of employment.[2] An insurer's bad faith failure to pay an award is not an injury arising in such manner and is consequently not covered by the statutory immunity. "A bad faith claim is separate and apart from the work relationship, and it arises against an insurer only after there has been an award against the employer." *Goodwin v. Old Republic Ins. Co.*, 828 P.2d 431, 434 (Okla.1992).

In *Brodeur v. American Home Assurance Co.*, 169 P.3d 139 (Colo.2007), the Colorado court observed that the legislature had not intended to abrogate common law bad faith tort remedies when it enacted additional legislation providing remedies for claimants in the workers' compensation arena. "Thus, we have consistently held that bad faith tort claims are distinct and separate actions available to workers' compensation claimants in addition to remedies under the Workers' Compensation Act, and that the resolution of bad faith tort claims is independent from the resolution of workers' compensation claims." 169 P.3d at 147. The court reasoned: "The injury underlying Petitioner's bad faith tort claims was the fact that Brodeur did not receive medical treatment in a timely manner. This injury occurred regardless of the ultimate outcome in the workers' compensation proceeding." *Id.* at 148.

The act upon which Mrs. Wetzel has attempted to premise her cause of action occurred outside the scope of the exclusive remedy provisions of the workers' compensation statutory scheme. It is completely improper for this Court to expand those immunity provisions beyond that which the legislature intended.

Based upon the foregoing, I respectfully dissent from the majority opinion in this case.

STARCHER, J., dissenting:

(Filed Nov. 9, 2007)

I respectfully dissent from the majority's opinion because of its piecemeal and incomplete examination of the record and of the Workers' Compensation Act. The majority's opinion essentially began with the presumption that defendant Employers Service Corporation ("ESC") was immune, and then proceeded to pick and choose parts of the record and the Act that supported that position.

This case really centers on the sixteen physician visits for which ESC refused to pay. The parties are in agreement that these visits were all related to Mr. Wetzel's work-related lung injury—an injury that the Workers' Compensation Commissioner had ruled compensable. The physician submitted the proper forms requesting payment to ESC, along with copies of Mr. Wetzel's medical records indicating the visits were related to his compensable injury.

ESC, however, simply didn't pay the doctor for the visits. The majority opinion repeatedly states that, at that moment, Mr. Wetzel should have exercised his statutory and regulatory right to protest the denial of his benefits. *See* 221 W.Va. at 613 n. 5 and 617 n. 12, 656 S.E.2d at 58 n. 5 and 62 n. 12. The problem with the majority opinion's statement is that, in the bureaucratic world of workers' compensation, *there was nothing to protest.* *W.Va.Code*, 23–5–1(b) [1993][1] states that decisions regarding benefits must

---

**2.** As this Court recognized decades ago, "[t]he Workmen's Compensation Act was designed to remove *negligently* caused industrial accidents from the common law tort system." *Mandolidis v. Elkins Indus., Inc.*, 161 W.Va. 695, 700, 246 S.E.2d 907, 911 (1978), *superseded by statute as stated in Handley v. Union Carbide Corp.*, 804 F.2d 265, 269 (4th Cir.1986). It was not designed to remove bad faith actions based upon improper handling of claims from the common law tort system.

**1.** All of the statutory code sections of the Workers' Compensation Act to which I refer, unless otherwise noted, are those sections in effect at the time the cause of action arose between 1993 and 1995.

be made "in writing," and then, within thirty days, the parties have an opportunity to file any objections. In this case, ESC never issued any writing—to Mr. Wetzel or to the doctor—refusing to pay for the doctor visits; instead, bills submitted by the doctor simply weren't paid. Hence, Mr. Wetzel was never on notice of ESC's decision, or the basis for its decision, and in the absence of a writing had nothing to which to object.

This Court routinely refuses to hear appeals from parties who are aggrieved by a circuit judge's unwritten, oral statements. Until the circuit judge formalizes his or her decision in a written, signed final order, this Court holds that there is simply nothing to appeal. *See, e.g., W. Va.R. Civ.Pro.* Rule 58 ("the court shall promptly settle or approve the form of the judgment and sign it as authority for entry by the clerk. The clerk, forthwith upon receipt of the signed judgment, shall enter it in the civil docket.... The notation of a judgment in the civil docket ... constitutes entry of the judgment; and the judgment is not effective before such entry."). Yet, in this case, the majority opinion faults a party for not appealing when there was nothing to appeal.

When the doctor's office later inquired by telephone, ESC told the doctor's employees that the visits weren't being paid because they had been deemed unrelated to Mr. Wetzel's occupational injury. Again, ESC didn't orally say *why* they were deemed unrelated, nor did they tell the doctor or Mr. Wetzel in writing *why* the bills were deemed unrelated; they just refused to pay the bills.

At this point, it appears that the doctor's office contacted Mr. Wetzel and informed him that he would have to personally pay the bills because, for unknown reasons, ESC was refusing to pay for the sixteen office visits. Mr. Wetzel contacted his workers' compensation attorney, and the attorney then wrote to

ESC inquiring why the bills were not being paid and asking ESC to authorize the office visits. The attorney, in her deposition, stated that she had "represented, literally, thousands of workers' comp claimants over the years," and said "I can't think of a single other time that I've had problems getting payment for office visits."

In hindsight, during the course of the instant lawsuit, ESC finally admitted the reason it didn't pay for the doctor office visits. The text of the paperwork submitted by the doctor to ESC clearly indicated that the office visits were related to Mr. Wetzel's employment injury. However, in the corner of the form, the doctor's office had written the wrong diagnosis billing code number which suggested that the office visits were for illnesses unrelated to Mr. Wetzel's employment injury—and, relying solely upon the code number, ESC refused to pay for the visits.

One of my many reasons for dissenting is this: What I just described above, the majority opinion summarizes in one sentence in a two-sentence footnote; and with the other sentence, the majority opinion summarily concludes that ESC was blameless and the doctor was entirely at fault for not reading ESC's mind, and resubmitting the bills with the correct code. 221 W.Va. at 613 n. 4, 656 S.E.2d at 58 n. 4. This is, of course, contrary to footnotes 5 and 12, where the majority opinion places the blame squarely upon Mr. Wetzel for not protesting decisions that were never written, never explained, and never conveyed to Mr. Wetzel until shortly before he died.[2]

Another of my reasons is that the immunity from employee lawsuits conferred upon an employer by *W. Va.Code,* 23-2-6 [1991] and – 6a [1949] is not, as the majority of this Court wishes, nearly infinite in its reach. That immunity is premised solely upon the occurrence of an accidental injury or death to an employee "in the course of and resulting

**2.** The majority opinion does, however, accidentally create an absurd proposition. *W. Va.Code,* 23-5-1 [1993] establishes a clear-cut thirty-day limitation period on the filing of any objections to any *written* decision respecting a workers' compensation award. The statute even specifies that the *written* decision *shall* notify the parties of the thirty-day limitation period. Since ESC's

decision to not pay Mr. Wetzel's bills was not in writing and did not notify him in writing of the limitation period, then logically, the thirty-day limitation period has never been triggered and never started to run. Does this mean that, some fourteen years later, counsel for Mr. Wetzel can legally protest ESC's refusal to pay for the office visits?

from" the employment that is compensable under the Act. *W.Va.Code*, 23–2–1 [1989]. Any injury or death caused by an employer to an employee that arises outside of the employer's workplace or outside the furtherance of the employer's business, and which is not compensable under the Act, is not subject to immunity.

Logically, this means that injuries that arise outside of the employer's business are compensable, not through the workers' compensation system, but through a recognized common law cause of action. Hence, as my colleague Justice Albright notes in his dissent, courts nationwide have recognized that employers, workers' compensation insurers, and workers' compensation claims handlers can be subjected to damages caused by an unreasonable or bad faith refusal to pay benefits. *See* Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 104.05[3] "Intentional Harassment by Delay or Termination of Payment or Treatment"; Michael A. Rosenhouse, *"Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due*," 8 A.L.R.4th 902(1981).

This interpretation of the Workers' Compensation Act is wholly supported by the Act itself. The Act specifically mandates that if a self-insured employer (like Mr. Wetzel's employer, Chemical Leaman) unreasonably refuses to pay benefits, then the self-insured employer loses any and all immunity conferred by the Act. *Ipso facto*, if a self-insured employer isn't immune, then any agent of the employer (like ESC) would also be subjected to civil liability.

*W.Va.Code*, 23–2–8 [1991] sets forth the circumstances under which a self-insured employer can lose any immunity conferred by *W. Va.Code*, 23–2–6. The statute states that if an employer elects to be self-insured and "pay individually and directly . . . compensation and expenses to injured employees," but then is "in default in the payment of [the] same" compensation and expenses, then the self-insured employer

> shall be liable to their employees . . . for all damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect

or default of the employer or any of the employer's officers, agents or employees while acting within the scope of their employment and in the course of their employment . . . and in any action by any such employee or personal representative thereof, such defendant shall not avail himself of the following common-law defenses: The defense of the fellow-servant rule; the defense of the assumption of risk; or the defense of contributory negligence; and further shall not avail himself of any defense that the negligence in question was that of someone whose duties are prescribed by statute . . . .

In other words, if a self-insured employer unreasonably fails to pay compensation and expenses to its injured employees, then the injured employee can sue the employer for any and all common-law damages, for both their work-related injury and for the injury caused by the refusal to pay the compensation and expenses.

This interpretation is buttressed by reading *W. Va.Code*, 23–2–8 *in pari materia* with the statute setting out the rights and responsibilities of a self-insured employer, *W. Va. Code*, 23–2–9 [1991]. *W. Va.Code*, 23–2–8 says that if a self-insured employer has not "otherwise fully complied with the provisions of . . . section nine of this article," then the self-insured employer is not immune and "shall be liable to their employees . . . for all damages suffered[.]" Section nine of the article, *W. Va.Code*, 23–2–9, required self-insured employers to pay "pecuniary compensation or medical attention . . . of the value at least equal to the compensation provided in this chapter[.]" Again, reading these statutes together, one must conclude that if a self-insured employer (or its agent) refused to pay for "medical attention" for an employee, then the self-insured employer (or its agent) could be subjected to civil liability.

This interpretation is further buttressed by later amendments to *W. Va.Code*, 23–2–9 by the Legislature in 2005 and 2007. Long after Mrs. Wetzel's cause of action against ESC arose, *W. Va.Code*, 23–2–9 was amended to also make it clear that if an employer "ceases to make required payments to the employer's injured employees," or "defaults

... in any payment required to be made as benefits," then the employer is in default.[3] And, as I just said, an employer in default is subject to liability pursuant to *W. Va.Code*, 23–2–8.[4]

Mrs. Wetzel should have her day in court to tell a jury how ESC's actions created stress and anguish that potentially shortened the life of her husband. Mr. Wetzel died thinking he was saddling his bride of many years with unpaid debts that arose from his employment. The majority opinion never mentions the facts I discussed above, and never mentions these arguments, never mentions these statutes, because to do so would have crippled the majority's pre-formed position. The majority opinion cherry-picked its facts and its law to create immunity for employers and their agents far beyond that ever envisioned by the Legislature. And Mrs. Wetzel, a widow, now suffers as a result.

I therefore respectfully dissent.

MAYNARD, J., concurring:

(Filed Dec. 5, 2007)

I agree with the majority opinion but write separately to briefly address some of the issues raised by my colleagues in their dissenting opinions.

The facts and the law of this case are simple. The facts concern a disagreement between an employee, Mr. Wetzel, and ESC, the workers' compensation administrator of self-insured employer Chemical Leaman, over the denial of payments for certain medical treatments based on ESC's determination that the treatments did not involve a compensable injury. The law of this case is likewise simple. It is indisputable that under the workers' compensation system created by the Legislature, self-insured employers and their agents enjoy immunity from suit with a few exceptions. This Court has recognized that the immunity provided by the workers' compensation system "is not easily forfeited." *State ex rel. Abraham Linc. Corp. v. Bedell*, 216 W.Va. 99, 104, 602 S.E.2d 542, 547 (2004).

> Under the Act, an employer who is otherwise entitled to immunity under § 23–2–6 may lose immunity in only one of two ways: (1) by defaulting in payments required by the Act or otherwise failing to comply with the provisions of the Act, or (2) by deliberately intending to produce injury or death to the employee.

*Abraham Linc, quoting Smith v. Monsanto Co.*, 822 F.Supp. 327, 330 (S.D.W.Va.1992). Because the instant dispute arose from a work-related injury and payment for costs associated with the injury are governed by the workers' compensation act, it is logical that the majority would begin with the presumption that ESC is immune and then proceed to determine whether any of the exceptions to immunity apply.

My dissenting colleagues would have us believe that ESC lost its immunity pursuant

---

**3.** In 2005, *W. Va.Code*, 23–2–9(f)(1) [2005] was amended to state that "[A]ny self-insured employer who, without good cause, ceases to make required payments to the employer's injured employees ... as benefits provided for by this chapter ... is in default." In 2007, the statute was dramatically re-written, but still states that "if a self-insured employer defaults ... in any payment required to be made as benefits ... to the employer's injured employees," the Insurance Commissioner and self-insured employer must do certain things to "remov[e] the employer from default status." *W. Va.Code*, 23–2–9(d)(1) [2007].

**4.** As Justice Albright suggests in his separate opinion, the 2005 adoption of *W. Va.Code*, 23–2C–21 [2005] creates a host of confusion in this area. *W. Va.Code*, 23–2C–21(a) states that "[n]o cause of action may be brought or maintained by an employee against a ... third party administrator ... who violates any provision of this chapter[ ]"

First, the Legislature's adoption of this statute in 2005 suggests that the Legislature believed, prior to 2005, that a cause of action could be brought against a third party administrator like ESC. In other words, it means the majority opinion found there was no cause of action under the statute when the drafters of the statute thought there was one.

Second, presuming that *W. Va.Code*, 23–2C–21 is constitutional, reading it together with *W.Va. Code*, 23–2–8 [1991] and *W.Va.Code*, 23–2–9 [2007] leads me to a horrifying conclusion: if, today, a third party administrator like ESC wrongfully failed to pay required benefits on behalf of a self-insured employer, then the self-insured employer would be in default and subject to liability, but the third-party administrator would be immune.

These arguments are entirely speculative, since *W. Va.Code*, 23–2C–21 was not raised by either party in this case.

to W.Va.Code § 23–2–8 by defaulting on payments of compensation and expenses to injured employees. In other words, they say that denying several of Mr. Wetzel's requests for payments constituted a default of required payments. This is incorrect. There is absolutely nothing in our statutory or case law that provides that when a self-insured employer or its agent denies a request for payment based on its determination that the medical care was not necessary to treat a compensable injury, the employer or its agent automatically loses its immunity. Such a proposition is wholly untenable. If such were the case, self-insured employers or their agents would be required to pay all requests regardless of their validity for fear of losing statutory immunity and being forced to defend a bad faith suit. In fact, employers and their agents are required to pay only *valid* workers' compensation related payment requests. Whether or not a specific payment request is valid is often a matter of dispute that must be settled after the claimant administratively protests the payment denial, a remedy of which Mr. Wetzel did not avail himself.

My dissenting colleagues also argue that several courts across the nation have held that employers, workers' compensation insurers, and workers' compensation claims handlers are not immune from actions that seek damages caused by alleged bad faith refusal to pay benefits. However, this Court has never recognized such a bad faith claim nor is the existence of such a claim apparent in our workers' compensation act. Also, with regard to the decisions of other courts, "in actions seeking to impose tort liability on an insurer for wrongful delay or refusal to make benefit payments, the courts frequently have held that the action was barred by the compensation statute as a whole, or, more particularly, by the statute's exclusive remedy provision or its penalty provision." Michael A. Rosenhouse, *"Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due,"* 8 A.L.R.4th 902 (1981) (footnotes omitted). Clearly, the majority opinion is consistent with the law of this Court, statutory law, and the decisions of many other courts.

In sum, despite the views of my dissenting colleagues, I believe the majority opinion is well reasoned and conforms to both the spirit and letter of the law as expressed in our workers' compensation act. Accordingly, I concur.